IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEIMY ELIZABETH MONDRAGON,
f/k/a JOSE RIVALDO MELENDEZ
MONDRAGON

        Petitioner,

v.                             No. 2:26-cv-1823-SMD-SCY

MARKWAYNE MULLIN, et al.,

        Respondents.

## ORDER GRANTING WRIT OF HABEAS CORPUS

**THIS MATTER** is before the Court on Petitioner's Petition for a Writ of Habeas Corpus. Doc. 1.  Having reviewed the petition, the response (Doc. 5), and the relevant law, the Court **GRANTS** Petitioner's request for the writ of habeas corpus.

## BACKGROUND

Petitioner Jeimy Elizabeth Mondragon is a citizen of Honduras who is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Otero County Processing Center in Chaparral, New Mexico.  Doc. 1 ¶ 1.  Petitioner fled Honduras in fear of the abuse and persecution she had suffered as a transgender woman.  *Id.* ¶ 17.  She initially obtained lawful residency in Mexico. *Id.* ¶¶ 18–19.  But the same threats reappeared there, and Petitioner decided to seek a pathway to lawful residency in the United States.  *Id.* ¶ 19.  She first entered the United States on May 24, 2021 pursuant to a grant of humanitarian parole.  *Id.* ¶ 16.  Although a notice to appear was issued, it was never entered.  Petitioner then settled in Washington D.C., where she became involved with Sasha Bruce Youth Center and Whitman Walker Health Center.  *Id.* ¶ 22. On December 27, 2024, Petitioner was convicted of simple assault.  *Id.* ¶ 24; Doc. 5 ¶ 5.  Simple

assault is a low-level misdemeanor offense in D.C.  *Id.*  As a result of this conviction, Petitioner received a 60-day suspended sentence and nine months of probation.  *Id.*  Petitioner complied with the terms of her probation.  *Id.*

Petitioner attended a scheduled probation check-in on October 16, 2026.  *Id.* ¶ 25.  Ahead of that hearing, the probation officer decided to call ICE and let them know when Petitioner would be arriving at the office. Doc. 5 ¶¶ 6–7.  ICE officers arrested then entered the building at the probation officers' cue and asked Petitioner for identification.  *Id.*  Petitioner readily provided them with her employment authorization and Social Security cards.  *Id.*  The ICE agents seem to have found that easy accession to be nugatory.  *Id.* ¶ 10.  Respondents candidly admit that ICE did not have a warrant for Petitioner's arrest at the time it was conducted.[1]  Undaunted by the constitution's strictures, ICE agents arrested Petitioner without a warrant.[2]  She was first transported to a sub-office in Virginia and then transferred to Otero.  She has remained in custody since.  Doc. 1 ¶ 25.

Once in custody, Petitioner appeared for numerous immigration hearings.  *Id.* ¶ 26.  On February 26, 2026, the immigration judge denied Petitioner's asylum application.  *Id.* ¶ 27.  The immigration judge granted withholding of removal Petitioner's removal proceedings are ongoing and he is not subject to a final order of removal.  *Id.*  Petitioner appealed the asylum denial and Respondents appealed the withholding of removal grant.  *Id.* ¶ 28. Both matters are pending before

---

[1] Respondents state that Petitioner was served with a Form I-200 Warrant for Arrest of an Alien on October 17, 2025. Petitioner was arrested on October 16, 2025. "Courts nationwide have repeatedly rejected this manifestly illegal practice by ICE officers with little effect." *Alfaro v. Mullin*, No. 26-0766, 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026), *clarified on denial of reconsideration sub nom. Sanchez Alfaro v. Mullin*, No. CV 26-0766, 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026).  In fact, the D.C. District Court enjoined this practice wholesale. *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 65 (D.D.C. 2025).  ICE is prohibited from "making warrantless civil immigration arrests in the District of Columbia without a pre-arrest individualized determination by the arresting agent of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *Id.*

[2] Respondents' statement of fact strangely omits the arrest, jumping from officers asking Petitioner for identification to them transporting her to Virginia.  *See* Doc. 5 ¶¶ 10–11.  Whether this omission is a simple oversight or a deliberate attempt to gloss over the warrantless arrest, it is immaterial to the Court's analysis.  The record makes patent that Petitioner (1) was arrested, and (2) ICE did not have a warrant.

the Board of Immigration Appeals.  *Id.*  Petitioner now seeks habeas relief on the grounds that her continued detention violates her Fifth Amendment Due Process rights.   Doc. 1 ¶¶ 80–83.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  Federal courts have the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  This power extends to the review of immigration-relation detention. *Zadvydas v. Davis*, 533 U.S. 678, 686 (2001); *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002); *Ozturk v. Hyde*, 155 F.4th 187, 207 (2d Cir. 2025) ("In a sentence, the district courts have habeas jurisdiction because petitioners challenge the legality of their detention, not a removal order.") (J., Nathan, concurring).

## DISCUSSION

Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A).  That provision empowers the Secretary of Homeland Security to "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."   *Id.*   Parole can terminate automatically or on notice.   Parole terminates automatically if the parolee departs the United States or on the applicable expiration date.  8 C.F.R. § 212.5(e)(1).  If parole terminates automatically, DHS is not required to provide the parolee with written notice.  *Id.*  Parole may also terminate if (1) the purpose for which parole was authorized has been accomplished or (2) a DHS official with the necessary authority determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen in the United States."  8 C.F.R. § 212.5(e)(2)(i).  If parole is terminated for either of these reasons, DHS

3

must give the parolee written notice of the termination. *Id.* After that written notice is issued, the non-citizen "shall be restored to the status that he or she had at the time of parole." *Id.*

      I.      Respondents' Revocation of Petitioner's Parole and Subsequent Detention of Her Violate the Fifth Amendment.

The Due Process Clause serves to "protect against the mistaken or unjustified deprivation of life, liberty, or property." *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025). "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others . . . [thus it] must be seen within the protection of the [Fifth] Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972). Petitioner's Fifth Amendment claim is evaluated under the factors first articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the government's interest.

      1.   Private Interest

Petitioner has an indisputable interest in her personal liberty. Freedom from detention "lies at the core" of the Due Process Clause. *Turner v. Rogers*, 564 U.S. 431, 445 (2011); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *see also Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1388 (10th Cir. 1981) ("No principle of international law is more fundamental than the concept that human beings should be free from arbitrary imprisonment."). When ICE arrested Petitioner, she had been living in the United States for over five years, obtained work authorization, and became involved with the LGBTQ+ in Washington D.C. Doc. 1 ¶ 22. Her private interest in continuing these activities and doing so without the interruption of custody is obvious. Moreover, the regulations reflect that the government must avoid placing parolees in extended custody following entry of to an exclusion, deportation, or removal order. "If the exclusion, deportation,

4

or removal order cannot be executed within a reasonable time, the alien *shall again be released on parole . . .*" 8 C.F.R. § 212.5(e)(2)(i) (emphasis added).  The only exception is if an authorized official concludes that releasing the individual would harm the public interest.  Although Petitioner is not subject to a final removal order, it is persuasive that the regulations specifically require release from detention if it becomes too lengthy.

The Court therefore finds that Petitioner's ongoing detention compromises her fundamental interest in physical liberty.  *Doe v. Noem*, 817 F. Supp. 3d 27, 55 (D. Mass. 2026) ("When USCIS invited . . . parolees to submit their I-130 Petitions and move to this country, and DHS granted them multi-year terms of parole, the parolees had reasonable expectations that they would be entitled to retain their liberty pursuant to some additional quantum of process."); *Mohammadi v. Bondi*, No. C26-420, 2026 WL 607767, at *5 (W.D. Wash. Mar. 4, 2026) ("[A]n individual such as Petitioner who has been released on parole under § 1182(d)(5)(A), and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.").

2. Erroneous Deprivation

First and foremost, warrantless arrests inevitably lead to the erroneous deprivation of fundamental liberty.  The Court thus echoes the sentiment expressed in *Mejia Huerta v. Noem*, No. 26-CV-01248, 2026 WL 555014, at *3 (S.D.N.Y. Feb. 27, 2026): "It is beyond dispute that arresting an individual without providing a basis for the arrest creates a high risk of the erroneous deprivation of his liberty."  The record does not provide a shred of evidence that Petitioner was informed of why she was being detained.  This alone is anathema to the very "essence of due process." *Mathews*, 424 U.S. at 348–49.

Second, there is a serious risk that the government will erroneously revoke Petitioner's parole will sans notice and an adjudicative hearing.  The regulations account for this concern, obligating DHS to provide written notice when they terminate parole, but that measure was not taken here.  8 C.F.R. § 212.5(e)(2)(i).  Post hoc, Respondents argue that Petitioner's detention is now justified on "alternate grounds" because the immigration deemed Petitioner "inadmissible."  Doc. 5 at 12. They go on to say that "any alleged defect in the initial arrest does not require immediate release from present civil immigration custody.  *Id.*  Respondents do not offer a citation for that assertion.  And regardless of whether released is required, it is the "typical remedy" for "unlawful executive detention."  *Munaf v. Green*, 553 U.S. 674, 693 (2008).  Moreover, the statute does not contemplate a finding of inadmissibility as a means of revoking humanitarian parole.  8 U.S.C. § 1182(d)(5)(A).  The Court directs Respondents to the following language:

> [W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.*  A parolee is only returned to custody when the purposes of parole "have been served."  8 U.S.C. § 1182(d)(5)(A).  There is no evidence that the Secretary determined the purpose of Petitioner's parole had been served. Respondents do not argue that this condition has been met in their response.  The Court finds that the risk of erroneous deprivation is quite high when the government unilaterally "terminate[s]" an individual's parole and then detains them without notice or explanation.  *Pablo-Mendoza v. Lynch*, 820 F. Supp. 3d 673, 682–84 (W.D. Mich. 2026) ("[J]ust as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute."); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (same);  *Noori v. LaRose*, 807 F.Supp.3d 1146, 1164-68 (S.D. Cal. 2025) (same).

3.  Government's Interest

The government has a general interest in protecting its borders, regulating immigration, and, at times, detaining people in that process.  *Brolan v. United States*, 236 U.S. 216, 218 (1915). However, Respondents do not establish how detaining Petitioner for nearly one year furthers those interests.  At minimum, DHS had to "follow its own regulations" and provide Petitioner written notice.  *Energy W. Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1209 (10th Cir. 2019); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  Petitioner would also be entitled to an adjudicative hearing where she can dispute the reasons for parole revocation prior to detention.  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)) (affirming that the Due Process clause generally "requires some kind of a hearing before the State deprives a person of liberty").  "Procedural safeguards would give Petitioner an opportunity to learn and address the reasons for the change and to make sure that his release is not being revoked arbitrarily."  *Noori*, 2025 WL 3295386, at *3.

The Court finds that Respondents' detention of Petitioner violates her Fifth Amendment Due Process rights and that she is entitled to habeas relief.  *Pablo-Mendoza*, 820 F. Supp. 3d at 682–84*; Aldana*, 822 F. Supp. 3d at 752 ("[B]ecause the Court has found that Petitioner's grant of humanitarian parole was still valid when he was detained on September 3, 2025, the Court finds that Petitioner's detention is unlawful."); *Noori*, 2025 WL 3295386, at *3 ("[T]he Government's revocation of Petitioner's humanitarian parole without notification, individual consideration, reasoning, or an opportunity to be heard violated his Due Process rights."); *cf. Rodriguez v. Bondi*, 821 F. Supp. 3d 727, 730 (W.D. Tex. 2026) ("Because the Government released Petitioner and permitted him to live in the United States for over three years, they cannot revoke that liberty without an individualized determination of the need to do so.").

7

**CONCLUSION**

It is hereby **ORDERED**:

1) The verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents shall release Petitioner within 48 hours of this Order being entered;

3) Respondents shall facilitate Petitioner's transportation from the detention facility by coordinating with her counsel and providing identity documents sufficient to return to her primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release.  This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements).  Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** revoke Petitioner's parole without providing notice and a hearing before a neutral decision maker.

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order and to entertain any motions for attorneys' fees.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**
